**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RONALD A. PRATI, JR., | : | Civil No. 08-5666 (FLW) |
|  | : |  |
| Petitioner, | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : |  |
| CRAIG L. CONWAY, et al., | : |  |
|  | : |  |
| Respondents. | : |  |
|  | : |  |

**APPEARANCES:**
Ronald A. Prati, Jr. ID #287442/272060B
Mid-State Correctional Facility
P.O. Box 866, Range Road
Wrightstown, New Jersey 08562
Petitioner Pro Se

**Freda L. Wolfson**, United States District Judge:

This matter is before the Court on petitioner Ronald A. Prati, Jr.'s application for habeas corpus relief under 28 U.S.C. § 2254.  For the reasons set forth below, the petition will be dismissed without prejudice, and no certificate of appealability will issue.

## I.      BACKGROUND

Since Petitioner has had substantial litigation history in this District, and the latest round of his legal actions is of direct relevance to the matter at bar, this Court finds it helpful to begin this Opinion with a review of Petitioner's pertinent state and federal proceedings.

## A.    STATE ACTIONS

In 1996, Petitioner was tried before a jury and convicted of first-degree aggravated sexual assault, first-degree robbery, second-degree aggravated assault, third-degree criminal restraint and third-degree possession of a weapon for an unlawful purpose.  See Docket Entry No. 1, ¶ 5; see also Prati v. Corzine ("Prati-1983"), 08-3847 (JAP), Docket Entry No. 1, at 3; State v. Prati ("Prati-State"), 2007 WL 895703, at *1 (N.J. Super. App. Div. March 27, 2007).[1]  The victim was a woman identified here by her initials P.H.[2]  See Prati-1983, Docket Entry No. 1, at 6; Prati-State, 2007 WL 895703, at *1.

---

[1]  The instant Petition asserts that Petitioner was convicted and sentenced in 1997. However, Petitioner's submission made in Prati-1983, Docket Entry No. 1, same as the summary of Petitioner's state proceedings provided in Prati-State, 2007 WL 895703, indicate that Petitioner was convicted in 1996 and sentenced in 1997.   The Court notes, in passing, that references to Petitioner's statement made in Prati-1983 are made pursuant to Rule 201(b), Federal Rules of Evidence.  See Jackson v. Broad. Music, Inc., 2006 U.S. Dist. LEXIS 3960, at *18 (S.D.N.Y. Jan. 31, 2006) ("the court may take judicial notice of public records and of 'admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings") (quoting Harris v. New York State Dep't of Health, 202 F. Supp.2d 143, 173 (S.D.N.Y. 2002), and citing Munno v. Town of Orangetown, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005)).

[2]

On April 15, 1993, approximately three weeks after P.H. was assaulted, another woman, D.M., was allegedly assaulted by [Petitioner] while hitchhiking to the Trenton Train Station.  She claimed that defendant offered to drive her to her destination, but that she declined after having second thoughts about hitchhiking. [Petitioner] pursued her, and eventually got out of the truck and began chasing her on foot. As she was running, D.M. ran into a parked police car and explained what had occurred.  Soon thereafter, the Trenton police found [Petitioner's] pick-up truck on the side of the road, and "then observed [Petitioner] walking from the grassy area alongside the road."  The police arrested defendant after noticing a similarity between his truck and the one described by P.H. (as a vehicle involved in assault on P.H.).

Prati-State, 2007 WL 895703, at *3.

The Superior Court, Law Division, Mercer County, sentenced Petitioner to an aggregate term of twenty years, with ten years of parole ineligibility.  See Docket Entry No. 1, ¶ 3; see also Prati-1983, Docket Entry No. 1, at 3-4; Prati-State, 2007 WL 895703, at *1.  The Appellate Division affirmed Petitioner's conviction and sentence on direct appeal.  See Prati-State, 2007 WL 895703, at *1 (citing State v. Prati, No. A-3652-96 (N.J. Super. Ct. App. Div. Jan. 10, 2000).  The trial court also denied Petitioner's subsequent post conviction relief ("PCR") petition.  See id.

> Less than a month after the denial of his PCR petition, [Petitioner] moved to compel DNA testing of semen recovered by the police from the victim's clothing. [Petitioner] argued that such a test would definitively establish that he was not the assailant, thus raising a reasonable doubt the he had sexually assaulted P.H.  The trial court denied the motion, concluding that: (1) the identity of the assailant was not a significant issue in the case; (2) any DNA evidence would not be material to resolving a disputed factual issue; (3) and DNA evidence excluding defendant as the source of the semen would not raise a reasonable probability that a motion for a new trial would be granted.

Id.

Petitioner appealed this latest decision, arguing that the Law Division erred in its conclusion that a DNA test should not be compelled.  See id.   The Appellate Division agreed with Petitioner's position, observing as follows:

> [while] the State argues . . . that [the] identity [of the sperm donor] is not a significant issue in the case [and] the requested DNA tests would not raise a reasonable probability that, if the results were favorable to [Petitioner, such results] would lead to the granting of a new trial . . . [the State's theory of the case employed during Petitioner's trial was such that it] entitled [Petitioner] to have the DNA material analyzed to determine whether or not he was the donor.  In reaching this conclusion, [the Appellate Division] specifically declined . . . to assess or otherwise predict what affect an exclusion of [Petitioner] as the donor of the DNA material would have on the State's ability to sustain its burden of proof [since] "the strength of the evidence against a defendant is not a relevant factor in

determining whether his identity as the perpetrator was a significant issue." State v. Peterson, 364 N.J. Super. 387, 396 (N.J. Super. App. Div.2003).

Id. at 4.[3]  Consequently, the Appellate Division remanded the case with instructions to compel DNA testing of the sperm recovered from P.H.'s pants, see id., and the Law Division directed such testing.

## B.    DEVELOPMENTS AFTER THE STATE PROCEEDINGS

According to Petitioner, a state public defender was assigned to represent Petitioner with respect to the legal actions which might ensue as a result of the Law Division's order directing DNA testing of the sperm recovered from P.H.'s pants.  See Prati-1983, Docket Entry No. 1, at 5. The public defender was contacted by Petitioner's mother on or about April 25, 2008, and informed Petitioner's mother that the DNA testing was conducted, and the test results excluded Petitioner as the donor of the sperm.  See id.  Petitioner's mother conveyed this information to Petitioner on April 27, 2008, and the public defender visited Petitioner at his correctional facility, to verify the same, on June 14, 2008.  See id.

## C.    PETITIONER'S SUBMISSIONS MADE IN PRATI-1983

On July 30, 2008, the Clerk received Petitioner's application and docketed it as a civil complaint submitted pursuant to 42 U.S.C. § 1983.  See Prati-1983, Docket.[4]

---

[3] During Petitioner's criminal prosecution, it was established that P.H. was engaged in a voluntary sexual activity with a man other than Petitioner about a week prior to the sexual assault and, therefore, P.H.'s sexual partner could be the donor of the sperm.  See  Prati-State, 2007 WL 895703.  In addition, the identity of the sperm donor might or might not be relevant to Petitioner's convictions on non-sexual-assault charges, i.e., first-degree robbery, second-degree aggravated assault, third-degree criminal restraint and third-degree possession of a weapon for an unlawful purpose.

[4] In addition to Prati-1983 and the instant matter, Petitioner initiated two other actions in this District: (1) Prati v. Nunn, 01-05924 (GEB) (a § 2254 action, filed on 12/17/2001 and

> Plaintiff's application consisted of: (a) forty-three pages arranged by Plaintiff out of his own emotional narratives and documents seemingly filed during Plaintiff's direct appeal of his criminal conviction or during his application(s) for post-conviction relief . . . and (b) one page "affidavit of poverty" informing the Court not of Plaintiff's financial position but of his alleged innocence on the charges upon which Plaintiff was convicted.

See Prati-1983, Docket Entry No. 7; see also id., Docket Entry No. 1.  The matter opened by the Clerk on the basis of that application was assigned to Honorable Joel A. Pisano.  On August 5, 2008, that is, five days after receiving Petitioner's submission, the Clerk received Petitioner's letter inquiring about the status of his case assigned to Judge Pisano.  See Prati-1983, Docket Entry No. 2.  Sixteen days later, that is, on August 21, 2008, the Clerk received Petitioner's amendment to his civil complaint.  See Prati-1983, Docket Entry No. 3.  On August 25, 2008, that is, four days after the receipt of Petitioner's amended complaint, Judge Pisano issued an order advising Petitioner that his application to prosecute a § 1983 action in forma pauperis could not be granted in light of Petitioner's failure to submit his six-month account statement; the order also advised Petitioner of the financial responsibilities and legal consequences of prosecuting a civil complaint in forma pauperis.  See Prati-1983, Docket Entry No. 4.

Ten days later, that is, on September 5, 2008, the Clerk docketed another letter from Petitioner.  See Prati-1983, Docket Entry No. 5.  In that letter, Petitioner: (a) requested Judge Pisano to reconsider the order denying Petitioner in forma pauperis status; (b) stated that Petitioner would be willing to file his six-month account statement only if he is granted the relief he was requesting; and (c) indicated that Petitioner was not interested in prosecuting a § 1983

---

terminated on 09/19/2002); and (2) Prati v. MacFarland, 02-05056 (RBK) (another § 2254 action, filed on 10/21/2002 and terminated on 10/18/2005).

action but was seeking solely a temporary restraining order / preliminary injunction directing

Petitioner's re-indictment in the state court (on the charges underlying his 1996 conviction), re-

trial of Petitioner in the state court, and release of Petitioner from confinement, presumably, until

completion of such re-trial.[5]  See id.

In light of Petitioner's statements to that effect, Judge Pisano directed the Clerk to reopen

Prati-1983 (see Prati-1983, Docket Entry No. 6) and issued an order, dated October 20, 2008,

observing as follows:

> [Petitioner informed the Court that Petitioner's] counsel forwarded the results of
> the DNA test to [Petitioner]: (a) with a recommendation to submit the results to
> [Petitioner's] parole board; and (b) with a notice that [Petitioner's] counsel would
> be filing motions and negotiating with the prosecutor in order to obtain either
> [Petitioner's] retrial or withdrawal or alteration of criminal charges upon which
> [Petitioner] was convicted [and] these negotiations are currently underway and the
> appropriate motions were either filed by [Petitioner's] counsel or are in the process
> of being drafted.  [Petitioner], however, appears to be unsatisfied with the speed
> of these developments [rather than with legal validity of his counsel's actions].

Prati-1983, Docket Entry No. 7, at 2.

Since Petitioner's letter, i.e., Prati-1983, Docket Entry No. 5, indicated that Petitioner was

seeking an order directing the State's Prosecutor's Office to re-indict Plaintiff, and mandating the

State to retry Plaintiff on such new indictment, Judge Pisano explained to Petitioner that a federal

judge has no jurisdiction to order such actions.  See  Prati-1983, Docket Entry No. 7, at 4-5.

However, being mindful of Petitioner's status as a pro se litigant, Judge Pisano clarified:

> [I]t appears plausible that [Petitioner] came to believe [that a federal court might
> have proper jurisdiction over his application] in light of federal courts' power to

---

[5]  It is not clear from Petitioner's letter whether Petitioner envisioned Judge Pisano to set
bail for Petitioner with regard to such release in anticipation of a state court re-trial, or to direct a
state court to do so, or simply release Petitioner from confinement, either on his own
recognizance or unconditionally.  See generally Prati-1983, Docket Entry No. 5.

grant prisoners habeas relief upon finding that the prisoners' confinement is in violation of the prisoners' federal rights.  If so, [Petitioner's] impression that a federal court has the power to grant [Petitioner] "a" remedy is correct: the Court has the power to review the propriety of a state prisoner's confinement under the mandate of 28 U.S.C. § 2254 or, if applicable, under that of 28 U.S.C. § 2241. Specifically, the Court's habeas power allows the Court to review [Petitioner's] challenges to his conviction as well as his challenges to denial of parole (although, pursuant to Habeas Rule 2(e), a litigant is obligated to submit separate applications if (s)he wishes to challenge different state decisions).  However, in the event [Petitioner] wishes to seek a writ of habeas corpus [Petitioner] shall file with the Clerk an appropriate petition establishing the Court's habeas jurisdiction and, in case of a § 2254 petition, asserting both timeliness of his application and exhaustion of state remedies (or stating grounds warranting excuse from the exhaustion requirement). . . . [S]uch habeas petitions shall be accompanied by [Petitioner's] filing fee of $5.00 or by his duly executed affidavit of poverty.

Id. at 5-6 (footnote omitted).

Judge Pisano, therefore, denied Petitioner's request for preliminary injunction and directed the Clerk to terminate Prati-1983 and to forward Petitioner a blank habeas corpus application and blank application to prosecute a habeas action in forma pauperis.  See id. at 6.

Although Petitioner's letter stating that he was seeking a preliminary injunction expressly stated that Petitioner would not file his six-month account statement unless Petitioner is granted the relief he was requesting, see Prati-1983, Docket Entry No. 5, and Judge Pisano's order denying Petitioner injunctive relief directed termination of Prati-1983 without assessment of a filing fee and without directing Petitioner's production of an in forma pauperis application in connection with this terminated matter, Petitioner nonetheless filed his in forma pauperis application in Prati-1983 and did so after the case was closed.  See Prati-1983, Docket Entry No. 8.  In response to that submission, Judge Pisano issued another order, which explained to Petitioner that: (a) an application to proceed in forma pauperis should be submitted not in the closed Prati-1983 matter but jointly with Petitioner's future application for habeas relief; (b) an in

forma pauperis application submitted in Prati-1983 could not alter the jurisdictional analysis

employed in that matter; and (c) Judge Pisano saw no reasonable basis for subjecting Petitioner

to assessment of filing fees in connection with Prati-1983, since that action was already

terminated by Judge Pisano for lack of jurisdiction.  See Prati-1983, Docket Entry No. 9.  In

addition, apparently being mindful of substantive and procedural hurdles that Petitioner could

face in connection with filing his habeas petition pursuant to 28 U.S.C. § 2254, Judge Pisano

provided Petitioner with detailed guidance.  See id. at 5-7, nn. 1 and 2.  Specifically, with respect

to the exhaustion requirement, Judge Pisano advised Petitioner as follows:

> Federal courts have consistently adhered to the exhaustion doctrine "for it would
> be unseemly in our dual system of government for a federal district court to upset
> a state court conviction without an opportunity to the state courts to correct a
> constitutional violation."  Picard v. Connor, 404 U.S. at 275 (citations and internal
> quotation marks omitted).  However, exhaustion is not a jurisdictional
> requirement; rather, it is designed to allow state courts the first opportunity to pass
> upon federal constitutional claims, in furtherance of the policies of comity and
> federalism. See Granberry v. Greer, 481 U.S. 129 (1987); Rose, 455 U.S. at
> 516-18; O'Halloran v. Ryan, 835 F.2d 506, 509 (3d Cir. 1987); see also Szuchon
> v. Lehman, 273 F.3d 299, 326 (3d Cir. 2001) (the key purpose for the exhaustion
> requirement is to allow the state tribunal to correct constitutional errors, if any,
> and to establish the legal and factual basis for the state courts' position).
> Consequently, even if a petitioner's claims have not been exhausted, the petitioner
> might, under certain circumstances, be entitled to a federal court's review of his
> claims.  See, e.g., Frisbie v. Collins, 342 U.S. 519, 522 (1952) (non-exhaustion
> properly overlooked where "special circumstances" required "prompt federal
> intervention").  Because (a) "the failure to exhaust state remedies does not deprive
> [a federal court] of jurisdiction to consider the merits of a habeas corpus
> application," Granberry, 481 U.S. at 131 (citing Strickland v. Washington, 466
> U.S. 668, 684 (1984); see also Rose, 455 U.S. at 515-20; Frisbie, 342 U.S. at
> 521-22; (b) "the general rule of exhaustion 'is not rigid and inflexible,'"
> Granberry, 481 U.S. at 136 (quoting Frisbie, 342 U.S. at 522); and (c) the
> exhaustion doctrine and its currently codified exceptions have a long history of
> judicial development both before and after their initial codification, see Brown v.
> Allen, 344 U.S. 443, 447-48 and n. 3 (1953), the Supreme Court and several
> lower courts have applied exceptions to the exhaustion requirement.  See
> Granberry, 481 U.S. at 131; Smith v. Goguen, 415 U.S. 566, 576-77 & n.19

(1974); Frisbie, 342 U.S. at 521-22; cf. Duckworth v. Serrano, 454 U.S. 1, 5 (1981); see also Weaver v. Foltz, 888 F.2d 1097, 1099-1100 (6th Cir. 1989); Corn v. Zant, 708 F.2d 549, 554 (11th Cir. 1983); Lockett v. Illinois Parole & Pardon Bd., 600 F.2d 116, 117 (7th Cir. 1979); Sostre v. Festa, 513 F.2d 1313, 1314 n.1 (2d Cir.), cert. denied, 423 U.S. 841 (1975); West v. Louisiana, 478 F.2d 1026, 1034-35 (5th Cir. 1973), adhered to in relevant part, 510 F.2d 363 (5th Cir. 1975) (en banc); Jenkins v. Fitzberger, 440 F.2d 1188, 1189 (4th Cir. 1971) (per curiam); Howard v. Sigler, 325 F. Supp. 278, 282 (D. Neb. 1971), rev'd on other grounds, 454 F.2d 115 (8th Cir.), cert. denied, 409 U.S. 854 (1972).  In general, the question the circumstances excusing exhaustion "exist calls for a factual appraisal by the court in each special situation." Granberry, 481 U.S. at 136 (quoting Frisbie, 342 U.S. at 522).  While, indeed, "those special circumstances [have to be] peculiar to [an individual] case, may never come up again, and a discussion of them could not give precision to the 'special circumstances' rule," Frisbie, 342 U.S. at 522, these exceptions might occur, for instance, in cases where enforcement of the exhaustion appears futile, or where dismissal would serve no interest, state or federal, and enforcement of the exhaustion requirement would burden the states with unnecessary litigation or would constitute a hollow exercise in etiquette. Accord Little Light v. Crist, 649 F.2d 682, 684-85 (9th Cir. 1981) ("considerations of fairness" and desire to avoid burdening state judiciary supersede exhaustion doctrine); Nash v. Israel, 533 F. Supp. 1378, 1380 (E.D. Wis. 1982) (dismissal "would serve no purpose"); Emmett v. Ricketts, 397 F. Supp. 1025, 1047 (N.D. Ga. 1975) (same, relying on Cole v. Follette, 301 F. Supp. 1137 (S.D.N.Y. 1969), aff'd, 421 F.2d 952 (2d Cir. 1970)). To illustrate, lack of exhaustion in the state courts might be excused if: (a) the highest state court consistently or recently has rejected claims identical to the petitioner's; or (b) all of the intermediate appellate courts in the state have rejected claims identical to the petitioner's, and the highest court has let those decisions stand; or (c) the state courts rejected an identical claim made by the petitioner's co-defendant; or (d) the state courts' statements or reasoning in denying the petitioner's other claims makes virtually certain that they also would reject the unexhausted claims.  See, e.g., Lynce v. Mathis, 519 U.S. 433, 436 n.4 (1997); Fisher v. Texas, 169 F.3d 295, 303 (5th Cir. 1999); Allen v. Attorney General, 80 F.3d 569, 572-73 (1st Cir. 1996); Goodwin v. Oklahoma, 923 F.2d 156, 157-58 (10th Cir. 1991) (same); Hawkins v. Higgins, 898 F.2d 1365, 1366-67 (8th Cir. 1990) (same).

Prati-1983, Docket Entry No. 9, at 5-6, n. 1.  In addition, Judge Pisano explained that,

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless . . . the factual predicate for the claim could not have been discovered previously through the exercise of due diligence . . . .

Id. at 6-7 (quoting 28 U.S.C. § 2244).

In order to ensure that Petitioner would be duly availed of this legal guidance, Judge Pisano directed service of his order upon Petitioner by certified mail, return receipt requested; and the Clerk duly noted execution of such service.  See Prati-1983, Docket Entry No. 9, at 7; Docket Entry No. 9-2; and Docket Entry No. 10.

In response to Judge Pisano's guidance, Petitioner filed one more letter in Prati-1983.  See Prati-1983, Docket Entry No. 11.  That final submission consisted of two missives, one addressed to Judge Pisano and another addressed to Chief Judge Garrett E. Brown.  See id.

The letter to Judge Pisano: (a) expressed Petitioner's discuss with Judge Pisano's statement that Petitioner would not be granted in forma pauperis status and assessed a $350.00 filing fee, since the Clerk's receipt of Petitioner's in Prati-1983 could not provide Judge Pisano with the necessary jurisdiction over Petitioner's application construed either as § 1983 complaint or as a motion for injunctive relief in the form of Petitioner's re-indictment, re-trial or release on bail in anticipation of such re-trial;[6] and (b) concluded with the following inflammatory statements:

> I mailed my petition for habe today . . . .  Please don't screw me around on this habe also.  Actually, you should recuse yourself and I request you do so, *as you wo[uld]n't investigate my exhaustion argument and excuse exhaustion as you should*, and you'll rule no merit, bla[h]-bla[h]-bla[h], empty hollow words.  I know your type.

---

[6]  The rationale of Petitioner's submission is mystifying in light of Petitioner's letter (Docket Entry No. 5) informing Judge Pisano of Petitioner's decision *not* to submit his six-month account statement unless Petitioner obtains the injunctive relief he desired; as well as in light of the October 22, 2008, order terminating Prati-1983 without assessment of filing fee and without directing Petitioner's production of his six-month account statement.

Prati-1983, Docket Entry No. 11, at 2 (emphasis supplied).[7]

### D.    PETITIONER'S INSTANT SUBMISSION-HABEAS PETITION

On November 6, 2008, upon the Clerk's receipt of Petitioner's petition for habeas relief

matter was assigned to the undersigned.  Petitioner's instant submission consists of: (a) a twenty-

page petition, see Docket Entry No. 1; (b) a cover letter informing the Court that Petitioner

submitted $5.00 filing fee "to expedite this matter" but that he was still requesting in forma

pauperis status, see Docket Entry No. 1-2;[8] (c) Petitioner's seven-page in forma pauperis

application showing balance ranging from $98.28 to $320.38, with an average balance well

exceeding $200.00, see Docket Entry No. 1-4; (d) twenty-eighth pages of appendices, see Docket

Entry No. 1-5; and (e) Petitioner's "Table of Contents" listing the petition, the in forma pauperis

application and the appendices.  See Docket Entry No. 1-3.  Two weeks later, Petitioner filed a

letter inquiring about the status of the instant matter.  See Docket Entry No. 2.

### 1.    Petitioner's Assertions as to the Timeliness of the Petition

Addressing the issue of timeliness of his instant Petition, the Petitioner stated as follows:

Although there should be time to toll still, this petition is based on the results of
the DNA test.  It is the result of the DNA test that is "the fact supporting the
claim."  The one-year limitation period should therefore begin to run from the
time the test result is "discovered." The petition here should be given the same
benefit.  The Petitioner "discovered" the test results on April 27, 2008 when told

---

[7]  The accompanying missive addressed to Chief Judge Brown requested "not allow Judge Pisano to handle [Petitioner's] petition for habe" and asserted that "Judge Pisano [was] a menace to [Petitioner's] efforts to obtain relief, [and Petitioner was] questioning [Judge Pisano's] ability to judge whether a window is open or not."  Prati-1983, Docket Entry No. 11, at 1.

The docket in this matter reflects no receipt of $5.00 filing fee.  See generally, Doket. The docket in Prati-1983, 08-3847 (JAP), similarly reflects no receipt of $5.00 filing fee, hence indicating that the filing fee was not erroneously docketed.

by his mother.  The Petitioner received documentation [verifying the results of the DNA test] on 8-15-2008.

Docket Entry No. 1, at 19.

Moreover, in his submission made in <u>Prati-1983</u>, Petitioner asserted that: (1) he "wrote to the Public Defender's Office numerous times [trying] to learn the status of the [DNA] testing.  He was never replied to"; and (2) only on "April 25, 2008, [Petitioner's mother], after numerous unproductive calls to the Public Defender's Office was finally told [that a public defender] was assigned [to represent Petitioner] and was given the [public defender's] name and phone number. [Petitioner's mother] then phoned [the public defender] and was told [that the] DNA [test] had been done. [Petitioner's mother] told it to [Petitioner] on April 27, 2008." <u>Prati-1983</u>, Docket Entry No. 1, at 5.

### 2.    Petitioner's Assertions as to the Exhaustion of His Claims

Petitioner's instant application provides the following statements as to Petitioner's exhaustion of his current grounds in the state courts:

QUESTION:   Direct Appeal of Ground One:
If you appealed from the judgment of conviction, did you raise this [Ground One]?
ANSWER:     No.

Docket Entry No. 1, at 5.

QUESTION:   Post-Conviction Proceedings [with regard to Ground One]:
Did you raise this [Ground One] through a post-conviction motion or petition for habeas corpus in a state trial court?
ANSWER:     No.

<u>Id.</u>

QUESTION:   Direct Appeal of Ground Two:

Page 12 of  25

> If you appealed from the judgment of conviction, did you raise this [Ground One]?
>
> ANSWER:     No.

Id. at 10.

> QUESTION:   Post-Conviction Proceedings [with regard to Ground Two]:
> Did you raise this [Ground One] through a post-conviction motion or petition for habeas corpus in a state trial court?
>
> ANSWER:     No.

Id.

> QUESTION:   Direct Appeal of Ground Three:
> If you appealed from the judgment of conviction, did you raise this [Ground One]?
>
> ANSWER:     No.

Id. at 11.

> QUESTION:   Post-Conviction Proceedings [with regard to Ground Three]:
> Did you raise this [Ground One] through a post-conviction motion or petition for habeas corpus in a state trial court?
>
> ANSWER:     No.

Id. at 14.

> QUESTION:   Direct Appeal of Ground Four:
> If you appealed from the judgment of conviction, did you raise this [Ground One]?
>
> ANSWER:     No.

Id. at 15.

> QUESTION:   Post-Conviction Proceedings [with regard to Ground Four]:
> Did you raise this [Ground One] through a post-conviction motion or petition for habeas corpus in a state trial court?
>
> ANSWER:     No.

Id.

QUESTION:   Please answer these additional questions about the petition you are filing.

Have all grounds you have raised in this petition been presented to the highest state court having jurisdiction?

ANSWER:   No.

QUESTION:   If your answer is "No," state which grounds have not been presented and give your reason(s) for not presenting them.

ANSWER:   All.  I really don't know why.  I'm a lay-person in law . . . .

QUESTION:   Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented?

ANSWER:   All.  However, they are before this Court now.

Id. at 17.

QUESTION:   Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging.

ANSWER:   There may or may not be a motion for bail pending in the Mercer County Superior Court.  I really don't know . . . .

Id. at 18.

In addition, Petitioner made an entry reading:

Exhaustion: exhaustion should be excused due to State [i.e., Petitioner's prosecutor] withholding DNA material from [a] lab[oratory].  Petitioner learned of withholding on July 23, 1996 [when a certain witness] testified that she requested the material and the State refused to submit it.  Petitioner has since July 23, 1996 utilized available state procedures to obtain actual DNA testing.  Now, 12 years later, Petitioner has the exonerating of genuine DNA testing, but is still falsely imprisoned.[9] Petitioner believes that this qualifies as "inadequate delay excused by the state" as Petitioner's "due diligence" obtained the DNA test result the State denied him initially.

---

[9]  The Court notes that Petitioner's submissions made in this action, as well as in Prati-1983, repeatedly state Petitioner's position that the results of the DNA test "exonerated" Petitioner with respect to the charges underlying his criminal conviction.  However, if the Court is to presume that the DNA results are as asserted by Petitioner, these results merely establish that Petitioner was not the donor of the sperm recovered from P.H.'s pants.  As the Appellate Division pointed out, no court can predict what effect an exclusion of Petitioner as the donor of the DNA material could have on the State's ability to sustain its burden of proof as to Petitioner's guilt.  See Prati-State, 2007 WL 895703.

Id. at 19.

## II.   DISCUSSION

### A.   THE PETITION SHOULD BE DISMISSED AS UNEXHAUSTED

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[]
the remedies available in the courts of the State," unless "there is an absence of available State
corrective process[] or . . . circumstances exist that render such process ineffective." 28 U.S.C. §
2254(b)(1); Rose v. Lundy, 455 U.S. 509, 515 (1982); Toulson v. Beyer, 987 F.2d 984, 987 (3d
Cir. 1993); see also Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532
U.S. 919 (2001) ("prior to determining the merits of [a] petition, [a court] must consider whether
[petitioner] is required to present [his or her] unexhausted claims to the [state's] courts").  The
courts of a state must be afforded an "opportunity to pass upon and correct alleged violations of
its prisoners' federal rights."  Wilwording v. Swenson, 404 U.S. 249, 250 (1971); Picard v.
Connor, 404 U.S. 270, 275 (1971); Evans v. Court of Common Pleas, Del. Cty., Pa., 959 F.2d
1227, 1230 (3d Cir. 1992), cert. dismissed, 506 U.S. 1089 (1993).  Moreover, a petitioner must
exhaust state remedies by presenting each of his federal constitutional claims to *each level of the*
*state courts* empowered to hear those claims.  See Ross v. Petsock, 868 F.2d 639 (3d Cir. 1989);
see also 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies
available in the courts of the State, within the meaning of this section, if he has the right under
the law of the State to raise, by any available procedure, the question presented").  Only if a
petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion
requirement is satisfied.  See Picard, 404 U.S. at 275; Castille, 489 U.S. at 350.  Exhaustion of
state remedies has been required for more than a century, since the Supreme Court's decision in

Ex parte Royall, 117 U.S. 241 (1886).  The exhaustion requirement is intended to allow state

courts the first opportunity to pass upon federal constitutional claims, in furtherance of the

policies of comity and federalism.  See Granberry, 481 U.S. 129 (1987); Rose, 455 U.S. at

516-18.  In addition, exhaustion also has the practical effect of permitting development of a

complete factual record in state court, to aid the federal courts in their review.  See Rose, 455

U.S. at 519.

Furthermore, while Petitioner is, apparently, of the impression that it is a duty of this

Court to seek and find ways to excuse the exhaustion requirement, see Prati-1983, Docket Entry

No. 11, at 2 (suggesting that it is the Court's obligation to "investigate [Petitioner's] exhaustion

argument and excuse exhaustion"), the burden to prove all facts establishing exhaustion is on

Petitioner.  See Toulson, 987 F.2d at 987.

Here, Judge Pisano already provided Petitioner with a detailed guidance as to those

narrow, factually unique, scenarios when a federal court might excuse the exhaustion

requirement, see Prati-1983, Docket Entry No. 9, at 5-6, n. 1, and there is no need for this Court

to recite the same.  In stark contrast with the scenarios detailed by Judge Pisano to Petitioner, the

Petition: (a) states, time and again, and in the most unambiguous terms, that *none* of his grounds

raised in the instant Petition was presented to *any* level of the state courts, see Docket Entry No.

1, at 5, 10-11, 14-15, 17; and (b) asserts that such lack of exhaustion should be excused merely

because the prosecutors, allegedly, withheld the relevant DNA material from Petitioner's counsel

and witnesses during the pre-trial proceedings.  See id. at 19.  However, the fact of prosecutorial

misconduct, even if it took place, does not supply a scenario allowing the Court to excuse the

exhaustion requirement.  See Prati-1983, Docket Entry No. 9, at 5-6, n. 1.  Indeed, every such

scenario involves an action *by state courts, not the prosecutors*.  See id. (clarifying that lack of exhaustion might be excused if: (a) the *highest state court* consistently or recently has rejected claims identical to the petitioner's; or (b) *all intermediate appellate courts* in the state have rejected claims identical to the petitioner's, and the highest court has let those decisions stand; or (c) the *state courts* rejected an identical claim made by the petitioner's co-defendant; or (d) the *state courts*' statements or reasoning in denying the petitioner's other claims makes virtually certain that they also would reject the unexhausted claims, and citing Lynce, 519 U.S. at 436 n.4; Fisher, 169 F.3d at 303; Allen, 80 F.3d at 572-73; Goodwin, 923 F.2d at 157-58; and Hawkins, 898 F.2d at 1366-67).[10]

---

[10]   In addition, "exhaustion is [presumed] not possible [if] the *state court . . .* find[s] the claims procedurally defaulted" and a state court review is, therefore, unavailable.  Toulson, 987 F.2d at 987 (emphasis supplied); accord Coleman v. Thompson, 501 U.S. 722, 730-32 & n.1 (1991); Harris v. Reed, 489 U.S. 255 (1989).  In determining whether state court review is available, this Court must "turn [its] attention to the actuality that the state courts would refuse to entertain" Petitioner's federal claims.  Lambert, 134 F.3d at 516; see also Christy, 115 F.3d at 207.  Most importantly, "unless [an actual] state court decision exists indicating that a habeas petitioner is clearly precluded from state court relief, the federal habeas claim should be dismissed for non-exhaustion, even if it appears unlikely that the state will address the merits of the claim."  Lambert, 134 F.3d at 517.  For example, the petitioner in Toulson v. Beyer, 987 F.2d 984, was a New Jersey prisoner who filed a § 2254 petition in the District Court for the District of New Jersey challenging his state conviction and sentence on five grounds.  The Appellate Division of the New Jersey Superior Court had affirmed his conviction; the New Jersey Supreme Court had denied his petition for certification; and the trial court had denied his motion to reconsider the sentence and his motion for post-conviction relief.  Toulson had not presented three of his § 2254 grounds to the New Jersey Supreme Court in his petition for certification.  The district court held that the claims were procedurally barred by N. J. Ct. R. 3:22-4 (barring consideration of grounds not raised in prior proceedings), in that Toulson had not raised them in his petition for certification to the New Jersey Supreme Court.  However, the Court of Appeals for the Third Circuit reversed and remanded, observing that Rule 3:22-4(c) dissolves the procedural bar where "denial of relief would be contrary to the Constitution of the United States or the State of New Jersey," and that other rules presenting potential procedural bars were likewise subject to relaxation.  The Court of Appeals instructed the district court to dismiss Toulson's petition without prejudice for failure to exhaust "[b]ecause no state court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state

Here, in contrast: (a) no state court ever ruled that Petitioner's grounds raised in the instant Petition and based on the results of the DNA test were procedurally barred; (b) the Supreme Court of New Jersey has not entered a chain of recent decisions consistently rejecting claims identical to Petitioner's; (c) the Appellate Division has not entered any systemic decisions rejecting claims identical to Petitioner's;(d) no state courts have rejected a claim which was made by Petitioner's co-defendant, and which was identical to Petitioner's; and (e) no state courts have made a statement, while denying Petitioner's other claims, which would make it virtually certain that the state courts also would reject the Petitioner's instant claims.  Indeed, Petitioner's submissions made either in this matter or in Prati-1983 do not suggest, even remotely, that the state courts have made findings of this kind; and this Court, on its own, is unaware of such decision by a New Jersey state court.

In fact, the procedural history of Petitioner's litigation in the state courts unambiguously indicates the state courts' willingness to entertain Petitioner's claims and to grant him relief: indeed, the DNA testing upon which Petitioner is basing his instant § 2254 application is as a result of the Appellate Division's decision to grant Petitioner relief.  If anything, Petitioner's history of state litigation -- as well as the fact that Petitioner might currently be in the process of obtaining relief from state courts, see Docket Entry No. 1, at 18 (indicating that Petitioner's counsel might be in the process of obtaining Petitioner's release on bail, in anticipation of his re-indictment and re-trial) -- unambiguously establishes that this Court's enforcement of the

---

law does not clearly require a finding of default."  Toulson, 987 F.2d at 989; compare Cabrera v. Barbo, 175 F.3d 307, 312-314 (3d Cir. 1999) (affirming dismissal of claims as procedurally defaulted after a New Jersey court had in fact refused to consider the petitioner's federal claims because they were procedurally barred).

exhaustion requirement would not be "a hollow exercise in etiquette."[11]  Therefore, the Petition shall be dismissed as unexhausted.

### B.     THE REMEDY OF STAY AND ABEYANCE IS NOT WARRANTED

As the foregoing illustrates, the Petition should be dismissed, without prejudice, for failure to exhaust state remedies. Such dismissal, however, necessarily raises concerns about Petitioner's ability to file a new and yet timely § 2254 petition upon due exhaustion of state remedies.  Thus, even though a court has no obligation to consider the stay-and-abeyance option sua sponte, see Aruanno v. Sherrer, 277 Fed. App'x 155, 158 (3d Cir. 2008) (citing Pliler v. Ford, 542 U.S. 225, 232 (2004), the decision cautioning against "forc[ing] upon district judges the potentially burdensome, time-consuming, and fact-intensive task of making a case-specific investigation and calculation of whether the AEDPA limitations period has already run or will have run by the time the petitioner returns to federal court," and Robbins v. Carey, 481 F.3d 1143, 1148-49 (9th Cir. 2007)), this Court finds it proper to make an assessment as to whether the remedy of stay-and-abeyance would be warranted in this matter.  See Urcinoli v. Cathel, 546 F.3d 269 (3d Cir. 2008) (cautioning against wholesale disregard of the timeliness-related considerations and of the prejudices that a § 2254 litigant might potentially suffer as a result of dismissal of the original § 2254 petition on exhaustion grounds).

---

[11]  While Petitioner's submissions at hand (as well as those made in Prati-1983) indicate Petitioner's dissatisfaction with the speed of currently undergoing state proceedings, see Docket Entry No. 1, at 18 ("I just get to sit in jail and wait what happens next"); accord Prati-1983, Docket Entry No. 1, at 28-29 (asserting that Petitioner should be re-indicted, re-tried or released immediately because certain of Petitioner's friends, family members and pets have died or will die during his incarceration, because he is aging, does not have children, his mother is paying for accepting his collect calls from prison, he is unable enroll in school or go to work, or hug his mother, etc.), a litigant's disappointment with lack of swiftness in the state court system does not provide this Court with a valid basis for excusing the exhaustion requirement.

The Supreme Court held, in <u>Rose v. Lundy</u>, 455 U.S. 509, that -- while no federal court may hear a petition containing both exhausted and unexhausted colorable claims -- a prisoner bringing a "mixed" petition, <u>i.e.</u>, a petition containing both exhausted and unexhausted colorable claims, should be allowed a choice between accepting a dismissal without prejudice (and returning to state court to exhaust all unexhausted claims) or deleting these unexhausted claims from the petition and proceeding only with the remaining exhausted claims.  <u>See id.</u> at 519, 522. However, with respect to a "mixed" petition, the exhaustion requirement is read in conjunction with that of timeliness.

28 U.S.C. § 2244(d)(1) provides for a one-year time limit on petitions filed pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA").   The AEDPA does not provide for tolling of the limitations period while a § 2254 petition is pending in federal court.  <u>See</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 181 (2001).  This fact presents a problem for litigants whose petitions include unexhausted colorable claims: such litigants might have their one-year period of limitation expired while they are waiting for the federal court's decisions dismissing their petitions as unexhausted, and such expiration of the limitations period precludes a later habeas review at the time when the due exhaustion of unexhausted claims is eventually attained.

> Because of AEDPA's short limitations period, the alternative of exhausting any unexhausted claims is often an illusory one, since it is not uncommon for a district court to dismiss a mixed petition after the one-year limitations period has passed and no time remains to return to state court.  The Supreme Court recognized and ameliorated that problem in 2005, adding a third alternative to the <u>Rose</u> procedure by providing that in certain circumstances a district court may "stay  the [mixed] petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims."  <u>Rhines v. Weber</u>, 544 U.S. 269, 275-76 (2005).

<u>Urcinoli</u>, 546 F.3d 269, 2008 U.S. App. LEXIS 23071, at *11.

However,

      Rhines dealt [only] with mixed petitions.  Traditionally, when a petition contains
entirely unexhausted state claims, the petition would be dismissed without
prejudice . . . [since] stay and abeyance of totally unexhausted petitions increases
the temptation to decide unexhausted claims and decreases the incentive to
exhaust first.  See Rhines, 544 U.S. at 277; Rose v. Lundy, 455 U.S. [at] 519.

United States v. Hickman, 191 Fed. Appx. 756, 757 (10th Cir. 2006); see also see Rasberry v.

Garcia, 448 F.3d 1150, 1153 (9th Cir. 2006) ("We decline to extend [the Rhines] rule to the

situation where the original habeas petition contained only unexhausted claims"); Thompson v.

Thomas, 2008 U.S. Dist. LEXIS 40552 (D. Haw. May 19, 2008) (same); Waples v. Phelps, 2008

U.S. Dist. LEXIS 31292, at *3 (D. Del. Apr. 16, 2008) ("a federal court will dismiss without

prejudice a habeas petition consisting entirely of unexhausted claims in order to give a petitioner

an opportunity to present the unexhausted claim to the state courts") (citing Lines v. Larkins, 208

F.3d 153, 159-60 (3d Cir. 2000)); Phipps v. Evans, 2008 U.S. Dist. LEXIS 13813, at *5 (E.D.

Cal. Feb. 25, 2008) ("Here, the court is not presented with a "mixed" petition. Petitioner has not

exhausted any of the claims now raised in this petition and the court has no jurisdiction.

Accordingly, the stay and abeyance procedure is unavailable"), vacated on other grounds, 2008

U.S. Dist. LEXIS 71469 (E.D. Cal. Aug. 7, 2008); see also Coleman v. Thompson, 501 U.S. 722,

731 (1991); Jiminez v. Rice, 276 F.3d 478, 481 (9th Cir. 2001).

      Since Petitioner unambiguously admits that *none* of his current grounds were ever

presented to any level of state court, see Docket Entry No. 1, at 17, the holding of Rhines is not

directly applicable to his Petition, and this Court should not grant Petitioner stay and abeyance.

See Dollar v. Rogers, 2007 U.S. Dist. LEXIS 75321, at *35 (D.N.J. Oct. 9, 2007) ("In this case,

the Petition is not a mixed petition, as none of Petitioner's claims are exhausted, and the holding

of Rhines is not directly applicable").  Moreover, even if this Court is to hypothesize that the

holding of Rhines could be read as applying to fully unexhausted petitions (rather than to

"mixed" petitions only), this Court declines to grant Petitioner a stay.

Here, Petitioner indicated that he has learned about the DNA tests underlying all his

current grounds between  April 27, 2008, and August 15, 2008, see Docket Entry No. 1, at 19

("The Petitioner 'discovered' the test results on April 27, 2008 when told by his mother.  The

Petitioner received documentation [verifying the results of the DNA test] on 8-15-2008"), and

Petitioner's mother obtained this information on April 25, 2008.  See Prati-1983, Docket Entry

No. 1, at 5.  Hence, even if this Court is to presume that Petitioner's one-year period of

limitations began to run on the day when Petitioner could have obtained this information from

his mother, i.e., on April 25, 2008, Petitioner's period of limitations will not expire until April 24,

2009, which allows Petitioner sufficient time to statutorily toll his limitations period by filing an

application with the state courts (challenging his conviction on the basis of the DNA test) and

returning promptly to this Court in the event he is dissatisfied with the outcome of the decisions

reached by all three levels of the state court.[12]

_____

[12]  Moreover: (a) no statement made by the Supreme Court in Rhines obligates a federal
court to find ways to salvage the claims of lax litigants; (b) the timing of the instant decision
already accommodates the scenario where Petitioner could be deemed able to discover the DNA
results through the exercise of due diligence in January -- rather than in April -- of 2008 (since
Petitioner can benefit from the explanations provided to him herein and file a state action in
January of 2009, thus statutorily tolling his period of limitations); (c) Petitioner's filing of a §
2254 action appears to be solely as a result of Judge Pisano's diligent (although, apparently,
unappreciated) guidance as to why Petitioner's challenges should be raised in a habeas
application rather than in the application to which Petitioner so tenaciously clung; and (d) in the
event Petitioner duly exhausts his claims and returns to this District for a habeas review, the
federal judge presiding over Petitioner's future action, if any, could grant Petitioner equitable
tolling in the event (s)he finds that justice so requires.  See Urcinoli, 546 F.3d 269, 2008 U.S.
App. LEXIS 23071, at *14.

Therefore, the Court finds that the Petition does not warrant stay and abeyance, either by falling, qualitatively, outside the type of petitions eligible for such remedy under the holding of Rhines v. Weber or, in the alternative, because the specific circumstances of Petitioner's application indicate that Petitioner has ample time to file a state action exhausting the grounds raised in this matter. Accord Rhines, 544 U.S. at 277-78 (stressing that the remedy of stay-and-abeyance is to be used only in "limited circumstances") (O'Connor, J., concurring).

## III.   CERTIFICATE OF APPEALABILITY

The Anti-Terrorism and Effective Death Penalty Act provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In Slack v. McDaniel, 529 U.S. 473, 484 (2000), the United States Supreme Court held: "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Since Petitioner's instant application is subject to dismissal for failure to exhaust state court remedies, the Court denies him a certificate of appealability, pursuant to 28 U.S.C. § 2253(c) because jurists of reason would not find it debatable that dismissal of the Petition as unexhausted is correct.

IV.   <u>**FILING FEE**</u>

The "revised [Habeas] Rule 3(b) requires the [C]lerk to file a petition, even though it

may otherwise fail to comply with [Habeas] Rule 2.  The [R]ule . . . is not limited to those

instances where the petition is defective only in form; the [C]lerk [is] also required . . . to file the

petition even though it lack[s] the required filing fee or an <u>in forma pauperis</u> form."  28 U.S.C. §

2254, Rule 3, Advisory Committee Notes, 2004 Am.

Pursuant to Local Civil Rule 81.2(b), any application for leave to proceed <u>in forma</u>

<u>pauperis</u> in a habeas corpus action must be accompanied by a certification signed by an

authorized officer of the institution certifying: (a) the amount presently on deposit in the

prisoner's prison account; and (b) the greatest amount on deposit in the prisoner's prison account

during the six-month period prior to the date of the certification. If the prison account of any

petitioner exceeds $ 200, the petitioner shall not be considered eligible to proceed <u>in forma</u>

<u>pauperis</u>.  <u>See</u> Local Civil Rule 81.2(c).  Here, Petitioner's prison account statement indicates

balance ranging up to $320.38, with an average balance well exceeding $200.00.  <u>See</u> Docket

Entry No. 1-4.  Therefore, pursuant to Local Civil Rule 81.2(c), Petitioner is not qualified to

proceed in this matter <u>in forma pauperis</u>, and his application to that effect will be denied.

V.   <u>**CONCLUSION**</u>

For the foregoing reasons, Petitioner's § 2254 application for a writ of habeas corpus will

be denied, without prejudice, as unexhausted.

Petitioner's application to proceed in this matter <u>in forma pauperis</u> will be denied.

The Court will deny Petitioner a stay, and no certificate of appealability will issue.

An appropriate Order accompanies this Opinion.


                                                  s/Freda L. Wolfson
                                                  **FREDA L. WOLFSON**
                                                  **United States District Judge**


Dated: December 17, 2008